# FIFTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

———————————————

Case No. 5D2025-1210
LT Case No. 2009-002872-CFAWS

———————————————

JOSEPH EDWARD JORDAN,

    Petitioner,

    v.

STATE OF FLORIDA,

    Respondent.

———————————————

Petition for Certiorari Review of Order
from the Circuit Court for Volusia County,
Kathryn Diane Weston, Judge.

Todd G. Scher, of Law Office of Todd G. Scher, P.L., Hollywood,
Melissa Ortiz, Miami, and Terence M. Lenamon, Fort
Lauderdale, for Petitioner.

James Uthmeier, Attorney General, Tallahassee, and Michael
W. Mervine, Senior Assistant Attorney General, Tampa, for
Respondent.


May 1, 2026


PER CURIAM.

    Joseph Edward Jordan seeks certiorari review of the trial
court's order that denied his Motion to Preclude Disclosure of

Mental Health Mitigation and State's Mental Health Examination. He claims that the trial court's order departed from the essential requirements of law causing irreparable harm.

On August 26, 2009, Jordan was arraigned for murder in the first degree and robbery with a deadly weapon and later found guilty in 2013. He was sentenced to death and the Florida Supreme Court affirmed the judgment and sentence on direct appeal. In the post-conviction phase, Jordan's death sentence was vacated in 2017 for resentencing under *Hurst v. State*, 202 So. 3d 40, 63 (Fla. 2016) (holding that unanimity is required in jury verdicts that recommend the death penalty). Jordan is currently awaiting resentencing.

At issue in this case is not whether the State may pursue the death penalty in the resentencing of Jordan (it may) but whether the State provided timely notice of its intent to seek the death penalty such that the State is entitled to conduct a mental health examination of Jordan under Florida Rule of Criminal Procedure 3.202.

At the time Jordan was arraigned in 2009, rule 3.202, entitled Expert Testimony of Mental Mitigation During Penalty Phase of Capital Trial: Notice and Examination by State Expert, stated:

> The provisions of this rule apply only in those capital cases in which the state gives written notice of its intent to seek the death penalty within 45 days from the date of arraignment. Failure to give timely written notice under this subdivision *does not preclude the state from seeking the death penalty*.

Fla. R. Crim. P. 3.202(a) (2009) (emphasis added). The highlighted language reflects that the State's failure to provide timely notice did not preclude it from seeking the death penalty; but untimely notice would result in the State's forfeiture of its ability to have its own expert examination of the criminal defendant.

In 2016, the Legislature amended section 782.04, Florida Statutes, to "provide notice requirements the State must follow when seeking the death penalty." *See In re Amends. to Fla. R. of*

*Crim. P.*, 200 So. 3d 758, 758–59 (Fla. 2016) (citing Ch. 2016–13, § 2, Laws of Fla.). Due to this legislative change, rule 3.181 was created with the intention of complementing rule 3.202, which was amended to be consistent with the statute. *See In re Amends.*, 200 So. 3d at 758 ("Consistent with the statutory requirements, new rule 3.181 requires the prosecutor to give the defendant notice of intent to seek the death penalty and to file the notice with the court within 45 days after arraignment."). Rule 3.181 provided:

> In a prosecution for a capital offense, if the prosecutor intends to seek the death penalty, the prosecutor must give notice to the defendant of the state's intent to seek the death penalty. The notice must be filed with the court *within 45 days of arraignment.*

Fla. R. Crim. P. 3.181 (emphasis added). At the same time, rule 3.202 was amended, providing that the "rule apply only in those capital cases in which the state gives *timely* written notice of its intent to seek the death penalty." Fla. R. Crim. P. 3.202(a) (emphasis added).

No question exists that the State initially failed to provide notice within 45 days of arraignment; it did not file its notice until February 2013, more than one thousand days after the August 2009 arraignment. As a result, the State was precluded from its own examination of Jordan in the penalty phase of the original proceedings; nonetheless, the penalty phase resulted in the imposition of the death penalty. If the State had timely filed its notice within 45 days of arraignment, it would have been allowed to conduct its own mental health examination—but it was successful without it.

Shortly before the post-conviction court ruling that Jordan was entitled to resentencing under *Hurst*, the State filed a new notice of its intention to seek the death penalty. In response, Jordan moved to preclude the State from conducting its own mental health examination under the version of rule 3.202 that existed at the time of Jordan's arraignment. Under applicable precedent, the plain language of that rule required the State to file a notice of intent within 45 days of arraignment, such that allowing the State to conduct its own mental health examination,

despite filing an untimely notice, justified relief under a writ of certiorari. *See Gonzalez v. State*, 829 So. 2d 277, 279 (Fla. 2d DCA 2002).

In *Gonzalez*, the petitioner made the same arguments that Jordan makes here, i.e., that the trial court's order causes irreparable injury and was a departure from the essential requirements of law. *Id.* Faced with similar facts, the Second District concluded that:

> [T]he trial court departed from the essential requirements of law by not following the clear dictates of rule 3.202, wherein it provides that "[t]he provisions of this rule apply *only* in those capital cases in which the state gives written notice of its intent to seek the death penalty within 45 days from the date of the arraignment." (Emphasis added). To force Gonzalez to comply with the rule would be contrary to the plain language of the rule and the intent expressed by the supreme court in [*Amends. to Fla. R. of Crim. P. 3.220-Discovery (3.202-Expert Testimony of Mental Mitigation During Penalty Phase of Cap. Trial)*, 674 So. 2d 83 (Fla. 1995)].

*Id.* at 279. The appellate court also agreed that "having to undergo a mental examination, which the rule would require after conviction, would cause irreparable damage that cannot be cured on appeal from a final judgment of conviction." *Id.*

The State argues that the current version of rule 3.202 should apply to a *Hurst* resentencing under the theory that the post-conviction court's order restarted the clock running for purposes of timely notice under the revised rule. The State's argument points out that the current version of the rule states that the "provisions of this rule [regarding mental mitigation in death penalty cases] apply only in those capital cases in which the state gives *timely written notice* of its intent to seek the death penalty." Fla. R. Crim. P. 3.202(a) (emphasis added). The highlighted language, according to the State, means that it has wider latitude in providing notice, which need only meet a generalized "timely" standard rather than the "45 days from arraignment" standard.

The problem with this argument is that the Legislature has made clear that "timely" notice, for purposes of the death penalty, is the "45 days from arraignment" standard. It requires that all death penalty cases follow the procedures in section 921.141, Florida Statutes (2026), and that "[i]f the prosecutor intends to seek the death penalty, *the prosecutor must give notice to the defendant and file the notice with the court within 45 days after arraignment.*" § 782.04(1)(b), Fla. Stat. (2026) (emphasis added). The highlighted and unequivocal statutory language is that the notice must be given 45 days after arraignment. A timely notice can be amended for good cause, but the State has not sought such an amendment in this case. *Id.* ("The court may allow the prosecutor to amend the notice upon a showing of good cause."). In any event, because the State did not advance good cause as a basis for amendment in the trial court, it is not at issue in this certiorari proceeding.

Further buttressing that the "45 days from arraignment" standard applies is that rule 3.181, newly adopted in 2016, states unequivocally that the "notice must be filed with the court within *45 days of arraignment.*" Fla. R. Crim. P. 3.181 (emphasis added). The clear statutory language of section 782.04(1)(b) and the clear language of rule 3.181 make evident that the State must give notice within 45 days of arraignment. A generalized "timely" standard, that allows for notice beyond 45 days from arraignment, would directly conflict with the statute and the rule. The only reasonable interpretation of the "timely written notice" language in rule 3.202(a) is that written notice is timely if given within 45 days of arraignment, as section 782.04(1)(b) and rule 3.181 both require.

Notably, neither the Legislature by statute nor the Florida Supreme Court in its rulemaking capacity has provided any wiggle room for timely notice to mean anything other than 45 days from arraignment in a capital case. As a textual matter, neither the statute nor the rule lists any event that triggers the notice requirement other than arraignment or its equivalent. The statute could be amended to say that notice may be given within 45 days of arraignment "or, if resentencing is ordered, within 45 days of any such order." For the State's argument to prevail, a court would

5

have to judicially interlineate this language, which would be an expansion of the statute that is outside of its purview.

In addition, the changes to rule 3.202 and the addition of rule 3.181 *increased* the State's burden in seeking the death penalty. Previously, the State could pursue the death penalty notwithstanding it failed to provide the 45 days' notice that the rule and statute required; untimely notice meant only that the State forfeited the ability to have the defendant examined by its chosen mental health expert. Now, the State is *required* to provide such notice within 45 days of arraignment, both to pursue the death penalty *and* to have its own expert evaluate the defendant. It would be unreasonable to adopt the broad and flexible standard the State requests (i.e., that notice provided years after arraignment is timely in the context of resentencing) when the changes to the rules cut in the other direction by tightening timeframes.

Finally, it bears emphasis again that the State had an opportunity to provide timely notice in the original proceeding but failed to do so. Nevertheless, the State was able to procure the death penalty against Jordan without the mental health evaluation it now seeks on resentencing. At resentencing, the State will be able to use any relevant evidence or testimony as to Jordan's mental health it previously used or has discovered—other than its own mental health evaluation of Jordan, which is precluded. The statute and rule gave the State one bite at the apple, and it would be improper to judicially create a new opportunity, a second bite at the apple, where the plain language of the statute and rule establish a firm deadline.

In summary, because the trial court's order fails to follow the text of the applicable statute and rule, it departed from the essential requirements of law. Irreparable injury is established by the nature of the compelled mental health examination. *Gonzalez*, 829 So. 2d at 279 (agreeing that undergoing a mental examination would "cause irreparable damage that cannot be cured on appeal from a final judgment of conviction"). As such, the petition for certiorari is granted.

PETITION GRANTED.

6

MAKAR and HARRIS, JJ., concur.
EDWARDS, J., concurring with opinion.

––––––––––––––––––––––––––––

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

––––––––––––––––––––––––––––

EDWARDS, J., concurring.

I concur in the majority opinion and join in the suggestion that the relevant rule should be amended to deal with the possible failure of the State to fully comply by giving timely notice where the disclosure and discovery procedures do not come into play until the penalty phase, and thus, cannot reasonably be seen to prejudice a defendant. In this case, the defendant had years and years of notice of the State's intent to seek the death penalty prior to the current resentencing penalty phase. If Florida Rule of Criminal Procedure 3.202 as currently written were the only avenue for the State to prepare to meet a defendant's mental health mitigation evidence, it would turn a reasonable procedure into a "gotcha."

It would seem that trial courts may have the ability to fashion appropriate, fair procedures outside those set forth in rule 3.202. As we know, whether interpreting a statute or rule, we adhere to the supremacy of the text. Rule 3.202(a) states: "[t]he provisions of this rule apply only in those capital cases in which the state gives timely written notice of its intent to seek the death penalty." However, the rule is silent about what provisions for disclosure and discovery, if any, are to be made in capital cases where the State fails to give timely notice. In *Dillbeck v. State*, our supreme court pointed out that fundamental fairness to the State and defense requires a level playing field when it comes to obtaining and offering evidence concerning the defendant's mental health and mitigation in the penalty phase. 643 So. 2d 1027, 1030 (Fla. 1994). "No truly objective tribunal can compel one side in a legal bout to abide by the Marquis of Queensberry's rules, while the other fights ungloved." *Id.* While it is the State that must comply with the rules, the victims, both primary and secondary, are the ones who may be deprived of the full measure of justice if the circumstances otherwise compel imposition of the ultimate penalty.